### 21614. ANDERSON, administrator, *v.* ASHFORD & COMPANY.

J. S. Adams, John L. Green, Green & Michael, for plaintiff in error.

Lamar C. Rucker, Wolver M. Smith, contra.

LUKE, J. We quote as follows from the bill of exceptions in this case: "In the case of Ashford & Company, a firm composed of W. H. Ashford, G. F. Ashford, and Mrs. Julia Ashford Billups, against E. C. Anderson, defendant, and O. L. Anderson as administrator of the estate of Miss Emma L. Anderson, deceased, garnishee, returnable to the January term, 1930, of the superior court of Laurens county, being a garnishment based upon a pending suit, the garnishee having answered not indebted and the answer being duly traversed, upon the trial of said traverse upon an agreed statement of facts without the intervention of a jury, the Hon. R. Earl Camp presiding, the court, after hearing argument of counsel, gave judgment for the plaintiff, sustaining the traverse, and against the garnishee, on April 25, 1931. To this judgment of the court the plaintiff in error excepted and now excepts, and assigns the same as error upon the ground that the same was contrary to law and to the evidence."

The following summary of the agreed statement of facts contained in the bill of exceptions is deemed sufficient: The note sued on was signed by E. C. Anderson and payable to Ashford & Company, a firm composed of W. H. Ashford, G. F. Ashford, and Mrs. Julia Ashford Billups. It was dated March 15, 1923, was due November 1, 1923, bore interest from date at the rate of eight per cent. per annum, and contained a complete homestead waiver. Suit was filed on said note on December 16, 1929, and on July 28, 1930, a judgment was rendered in favor of Ashford & Company against E. C. Anderson for $655 principal, interest, attorney's fees, and costs. On December 17, 1929, a summons of garnishment based upon said suit was served upon O. L. Anderson as adminis-

trator of the estate of Miss Emma L. Anderson. Said administrator answered "not indebted," his answer was duly traversed, and notice of said traverse was duly served upon said administrator. On May 12, 1930, E. C. Anderson filed his voluntary petition in bankruptcy in the Federal court, and was adjudicated a bankrupt as of that date. Anderson listed Ashford & Company as an unsecured creditor in the amount of said note, and said company was duly notified of the filing of the petition in bankruptcy and of the first meeting of creditors. Ashford & Company filed no proof of debt and in no way participated in said bankruptcy proceedings. At the time of filing his petition in bankruptcy, E. C. Anderson was indebted to Mrs. S. F. Anderson in as much as $1,085, and Mrs. S. F. Anderson was duly listed as an unsecured creditor. E. C. Anderson listed among his assets a twelfth interest in the estate of Miss Emma L. Anderson, valued at $400, and other assets, amounting to about $187, and claimed a homestead as head of a family composed of a wife and five minor children. On June 28, 1930, a homestead was duly set apart to the bankrupt. On April 14, 1930, said bankrupt transferred and assigned in writing to Mrs. S. F. Anderson, in consideration of his indebtedness to her of $1,085, "all his exemption property claimed . . as a bankrupt or that may be set apart . . by order of the court of bankruptcy." The agreed statement of facts concludes in this language: "There was at the time of the trial of said traverse, and at the time of making the amended answer, in the hands of O. L. Anderson as administrator of Miss Emma L. Anderson, deceased, $400 in cash as the distributive share of E. C. Anderson, an heir of this estate, and . . said $400 passed to Mrs. S. F. Anderson under the assignment of his homestead made . . on the 14th day of April, 1930, provided the same was not subject to the judgment obtained as heretofore set forth by Ashford & Company against the said E. C. Anderson."

The first question for determination is raised by a motion to dismiss the bill of exceptions for the reason that the assignment of error is not sufficiently specific, and "does not point out the reason why the judgment is contrary to law."

The Civil Code (1910), § 6139, provides that a bill of exceptions "shall specify plainly the decision complained of, and the alleged error." Section 6203 reads: "The Supreme Court shall

not decide any question unless it is made by a special assignment of error in the bill of exceptions, and shall decide any question made by a specific assignment of error in the bill of exceptions." Section 6183 is as follows: "It shall be unlawful for the Supreme Court of Georgia to dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to that court, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." In construing sections 6203 and 6183, supra, in the case of *Turner* v. *Alexander,* 112 *Ga.* 820, 821 (38 S. E. 35), the Supreme Court laid down this rule: "In other words, an assignment of error will be sufficient if this court, viewing it in the light of the record, can ascertain substantially what questions the trial court passed on, and which are sought to be reviewed here; but when neither from the bill of exceptions nor from the record, nor from both together, is it possible for this court to ascertain with reasonable certainty what questions were made and passed upon by the court below, it has no jurisdiction to entertain the writ of error."

The opinion in the case of *Patterson* v. *Beck,* 133 *Ga.* 701 (66 S. E. 911), contains a most illuminating and convincing discussion of the sufficiency of assignments of error. Referring to the code-sections quoted above, Justice Lumpkin, speaking for the court, said: "The last-mentioned act was evidently intended to liberalize somewhat the former ones, or at least the construction which had sometimes been given to them. Rules of this character are made for a substantial purpose, not as mere technical pitfalls to catch the unwary." In the same opinion this rule is laid down: "Where there are several things involved in a judgment, the thing complained of ought to be made to appear. . . When this [rule] is borne in mind, and the language used in the various decisions is considered in the light of the facts of the respective cases before the court, if not all apparent conflict, at least most of it, practically disappears." This statement is in thorough accord with our experience. It appears that in the *Patterson* case the question involved was whether or not "the garnishing creditor obtained any right to the funds . . caught under the garnishment," that this was the only question involved, and that the court determined that

issue upon facts about which there was no controversy. That the converse of the rule above stated is true appears from the language in which the court decided the question at issue. We quote it as follows: "It is distinctly shown that there was no controversy about facts; that only one question of law was submitted to the court; that the court decided it adversely to the contention of the plaintiff in error, and entered a judgment against him; and that the latter excepted and assigned this as error. Good practice required no more. Nothing more could well be said, except that the ruling as to this question of law was error because it was wrong. The law requires no such repetition." In the case of *Ocilla So. R. Co.* v. *Morton,* 17 *Ga. App.* 703 (87 S. E. 1088), the court decided the question at issue in the precise language just quoted from the *Patterson* case. In the case of *Gleason* v. *Traynham,* 111 *Ga.* 887 (36 S. E. 969), the rule was applied as follows: "Where a case was submitted to the presiding judge without the intervention of a jury, and a judgment in favor of the plaintiff was rendered, an assignment of error in the bill of exceptions upon the judgment, in the following language, was sufficiently specific: 'To which judgment the defendant excepts, assigns the same as error, and says the court erred in finding any sum for the plaintiffs, and that under the law and facts his judgment should have been in favor of the defendant.'" The rule was applied again in *Scott* v. *Ward,* 21 *Ga. App.* 535 (94 S. E. 863).

Of course, if the case had been submitted to the court upon both questions of law and fact, as was done in many of the cases cited by the defendant in error, the assignment of error would be fatally defective in not specifying whether the judge erred as to matter of law, or as to matter of fact, or as to both. *Fidelity & Deposit Co.* v. *Anderson,* 102 *Ga.* 551 (28 S. E. 382); *Kirkland* v. *A. & B. Ry. Co.,* 126 *Ga.* 246 (55 S. E. 23); *Kennedy* v. *Rumble,* 4 *Ga. App.* 415 (61 S. E. 839). However, when the matter is reduced to its last analysis, the only question for the court to decide in the case at bar was whether the garnishment served more than four months before the voluntary petition in bankruptcy was filed, or the transfer of the defendant's homestead rights within said four-months period, took the $400 that was in the hands of the garnishee at the time he was served with the summons of garnishment. Therefore, satisfied as we are that the judgment involves but a single question,

and that a clear-cut question of law, we hold that the assignment of error is sufficient, and overrule the motion to dismiss the bill of exceptions.

We come now to decide the only question presented by the record in this case. Our conclusion, after a careful study of the authorities bearing upon that question, is that the trial judge properly sustained the traverse and awarded the fund to the plaintiff in execution. Our authority for this holding is found in the case of *Light* v. *Hunt,* 17 *Ga. App.* 491 (2) (87 S. E. 763), and the cases there cited. It was there held: "The service of a summons of garnishment more than four months before a proceeding in bankruptcy is filed creates a lien upon any property, money or effects of the debtor which may be caught in the hands of a garnishee. Civil Code, § 5273; *Citizens National Bank* v. *Dasher,* 16 *Ga. App.* 33 (84 S. E. 482) ; In re Maher, 169 Fed. 997 (22 Am. B. R. 290) ; Hobbs *v.* Thompson, 160 Ala. 360 (49 So. 787, 18 Ann. Cas. 382, note). See also *National Surety Co.* v. *Medlock,* 2 *Ga. App.* 665, 673 (58 S. E. 1131)." Counsel for the plaintiff in error differentiate the *Light* case, and similar cases, from the case at bar in certain particulars. However, we see no such difference as prevents the ruling in those cases from applying in the case we are considering.

Counsel for the plaintiff in error requests that the *Light* case and the Georgia cases cited therein be reviewed and overruled "in so far as they conflict with the case at bar." In this connection counsel cite *Herndon* v. *Braddy,* 39 *Ga. App.* 165 (146 S. E. 495), and insist that it "impliedly overrules all the decisions set out above." That decision merely reaffirms the rule announced in *Garrard* v. *Moffett,* 51 *Ga.* 93, that "where money is brought into court under an execution issued upon a judgment against a garnishee, the oldest judgment against the defendant takes the fund," and overrules the case of *General Motors* v. *Bank of Valdosta,* 31 *Ga. App.* 475 (120 S. E. 794). Certainly the Herndon case is no authority for overruling the *Medlock* case, cited as authority in the *Light* case, for the reason that the nature of "liens" was discussed at length in the *Medlock* case, and it was held that whether the service of a summons of garnishment created a technical lien or not, the garnishing creditor took the funds; and for the further reason that the doctrine announced in the

182

*Garrard* case, and followed in the *Herndon* case, was recognized in the *Medlock* case. Therefore the request to modify or overrule the decisions referred to is denied.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*