ANDERSON, administrator, *v.* ASHFORD & COMPANY.

*Green & Michael, John L. Green,* and *John S. Adams,* for plaintiff in error.

*Lamar C. Rucker* and *Wolver M. Smith,* contra.

Gilbert, J. This case came, by writ of certiorari, from the Court of Appeals. E. C. Anderson executed to Ashford & Co., a firm composed of three individuals, a promissory note which contained a complete waiver of homestead. Judgment was obtained against Anderson on the note, July 28, 1930, in a suit begun on December 16, 1929. On May 12, 1930, Anderson filed a voluntary petition in bankruptcy, in which he listed Ashford & Co. as an unsecured creditor in the amount of the note. They were duly notified of the bankruptcy, but filed no proof of the debt and in no way participated in the proceedings. Anderson listed among his assets a twelfth interest in the estate of Emma L. Anderson, valued at $400, and other assets amounting to $187, and claimed a homestead, which was duly set apart. On April 14, 1930, Anderson transferred and assigned in writing "all of his exemption property claimed . . as a bankrupt, or that may be set apart . . by order of the court of bankruptcy," to Mrs. S. F. Anderson, to whom he was indebted as much as $1085 at the time of filing his petition in bankruptcy, and she was listed in his schedules as an unsecured creditor.

On December 17, 1929, garnishment was served on the administrator of the estate of Emma L. Anderson. To his answer of "not indebted" a traverse was filed, and the issue thereby made was submitted to the trial court with a jury, who found that the plaintiff in execution, Ashford & Co., do recover of the garnishee as administrator of Miss Emma Anderson, deceased, out of the funds in her hands belonging to E. C. Anderson, defendant in fi. fa., the sum of $400, and costs. The administrator excepted, and the judgment was affirmed by the Court of Appeals. 44 *Ga. App.* 176 (160 S. E. 804).

■ "A garnishment is a suit." *Ahrens & Ott Mfg. Co. v. Patton &c. Co.,* 94 *Ga.* 247, 250 (21 S. E. 523). "It is against the garnishee and his creditor." Id. "While ancillary to the main suit, a garnishment is a distinct cause of action between different

**662**

parties, requiring a separate and independent judgment." *Dent* v. *Dent,* 118 *Ga.* 853 (45 S. E. 680). "The main suit and the garnishment proceeding are separate and distinct. While it is true that the garnishment, where sued out in a pending action, is contingent on the pendency of the action, as a condition precedent, yet where the affidavit and bond have been filed and the summons of garnishment has issued, it then becomes a proceeding entirely distinct from the main action. Its course is stayed until judgment has been had against the defendant in the main suit; and when this occurs, the garnishment case becomes at once vitalized and active, and the issue, if any, raised by the answer of the garnishee and traverse by the plaintiff is ripe for trial." *Warlick* v. *Neal Loan & Banking Co.,* 120 *Ga.* 1070 (48 S. E. 402). There can be no dispute that when a summons of garnishment has been served as provided by law, with proper foundation, it legally binds the garnishee to hold whatever funds he may have or may owe to the defendant debtor until he has, by the judgment of the court, been released from the effect of the garnishment proceeding or the fund has been paid into court or as directed by the court.

A garnishment proceeding, after service, is generally said to create a "lien." In this case it is denied that a lien is created. Courts and text-writers have in different ways undertaken to describe the effect created by serving a process of garnishment. It is at least an inchoate or an incomplete lien. It is not a perfected lien until there is a valid judgment in favor of the garnishing creditor against the defendant debtor. In this case the summons of garnishment was served more than four months before the defendant was adjudicated a bankrupt. Subsequently to this the debtor assigned the fund and was duly adjudged a bankrupt. After the bankruptcy the judgment was rendered. If the judgment was nullified and made void by the bankruptcy, the garnishment would fall with it. On the other hand, if the judgment was not discharged by bankruptcy, the inchoate lien would become perfected by the judgment and would date from the service of garnishment. If it were otherwise, that is, if the lien when perfected dated from the rendition of the judgment, the garnishment would so often fail of its purpose that it would be worthless. Such construction would be tantamount to declaring that, when a garnishment is served, the garnishee is free to dispose of the funds as he pleases

until a lien is created by judgment in the main case. It would follow, by such rule, that the debtor of the garnishing creditor would be free to assign or direct the fund as he chooses, until the judgment is rendered against him. That is exactly what is contended in this case. It can not be that our garnishment law is susceptible of that construction. If the lien fixing the priority of claim comes into existence with and as a part of the judgment against the debtor, and not with the service of garnishment, the latter would be useless. To so construe it would throw the garnishment machinery out of gear, or completely wreck it.

The office of a garnishment proceeding is to make sure that property or effects in the hands of a third party are held subject to the order of the court until conflicting claims are adjudicated. It has frequently been held that "a judgment creates no lien on choses in action belonging to the defendant." *Armour Packing Co.* v. *Wynn,* 119 *Ga.* 683 (46 S. E. 865), and cit.; *Fourth National Bank* v. *Swift,* 160 *Ga.* 372, 376 (127 S. E. 729); Civil Code (1910), § 5948. Where no garnishment has been served upon the holder of property of the bankrupt debtor, his assignment of homestead exempt property "would be superior to a subsequently rendered judgment on a homestead-waiver note executed prior to bankruptcy." *Morris Fertilizer Co.* v. *White,* 158 *Ga.* 38 (122 S. E. 692). To enforce the liability of the garnishee there must be a separate judgment rendered subsequently to that against the debtor. The garnishment which brings the funds or property into court, or the judgment which creates a liability on the garnishee, does not determine who among several creditors shall receive the proceeds. The court, having obtained jurisdiction to determine the fact, orders it "paid over to the creditors of the defendant, according to the priorities now established by law." Civil Code (1910), § 5290. The older judgment takes the fund, although such creditor may have sued out garnishment and had it served subsequently to one served by another creditor. *Garrard* v. *Moffett,* 51 *Ga.* 94. Or the older judgment may take the fund without having instituted garnishment, if the fund has been caught and placed within the jurisdiction of the court by another. So it was decided in *Armour Packing Co.* v. *Wynn,* supra. "The lien obtained by the service of a summons of garnishment issued on an existing judgment is created by the garnishment, and not by the judgment." And see

*Citizens Bank & Trust Co.* v. *Pendergrass Banking Co.,* 164 *Ga.* 302 (138 S. E. 223). The Civil Code (1910), § 5273, in part provides: "The service of a summons of garnishment shall in all cases *operate as a lien* [our emphasis] on all the garnishee's indebtedness at the date of the service, . . and such lien shall not be defeated by any payments," etc. So it will be seen that the statute expressly states that the service of summons of garnishment creates a lien.

In *McKenney* v. *Cheney,* 118 *Ga.* 387 (45 S. E. 433), this court ruled: "The effect of 67f of the national bankruptcy act is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, in order that the property may pass to and be distributed among the creditors of the bankrupt. It is applicable only as against such trustee, and was designed to prevent preferences among creditors." And "A discharge in bankruptcy does not discharge the lien of a judgment obtained within four months prior to the adjudication of bankruptcy, upon a note waiving the homestead exemption allowed by the laws of this State upon lands set aside by the bankrupt court as exempt." The ruling made in the portion first quoted was followed in *Spradlin* v. *Kramer,* 146 *Ga.* 396 (91 S. E. 409). That ruling was concurred in by all of the Justices, Atkinson, J., concurring in the judgment. It was again ruled in *Coker* v. *Utter,* 152 *Ga.* 157 (108 S. E. 538), and again in *Pentecost* v. *Elder,* 162 *Ga.* 504 (134 S. E. 171). The facts of the case last cited are not shown in the report, but an inspection of the record of file in this court shows that it presented the same question as that dealt with in the present case and in the cases just cited. It was so ruled in *Equitable Credit Co. Inc.* v. *Miller,* 164 *Ga.* 49 (137 S. E. 771), all the Justices concurring, and see also *McBride* v. *Gibbs,* 148 *Ga.* 380, 384 (96 S. E. 1004). The true test in cases like this for determining whether there is a conflict will be to ascertain whether or not a valid and binding judgment not dischargeable in bankruptcy was rendered, or whether the contrary was true. This is not a case of attachment, and we are not concerned with liens created by attachment.

Counsel for plaintiff in error insist that the judgment rendered in the Court of Appeals conflicts with the decision in *Willis* v.

*Persons,* 13 *Ga.* 335, 339, because in that case it was said that the act of 1822, providing for summons of garnishment "as in cases of attachment," does not create "a lien as in cases of attachment." The correct interpretation of what was ruled in that case shows that the court was merely explaining that garnishment under the act of 1822 did not stand "upon the same footing in regard to liens created thereby as garnishment issued in attachment cases," and then followed the statement that the act of 1822 intended to afford a new remedy by which the summons of garnishment issued "as in cases of attachment," but did not create "lien" as in cases of attachment. We think it is well understood that the liens created by summons of garnishment are "inchoate," whereas the lien of an attachment dates from its levy and is not inchoate. It is a completed lien. Counsel, in this connection, say that the case of *Willis* v. *Parsons* distinctly shows that a garnishment was not considered a lien, but *only the means of bringing money into court.* As stated above, writers differ as to whether the "lien" is created by garnishment, but it merely complicates the situation to dwell upon the precise meaning of the word "lien" as used in the Code. The meaning of an "inchoate" lien is well understood, and that term is properly applied with reference to the lien created by summons of garnishment. Bouvier defines the word "inchoate" as "that which is not yet completed or finished." So there is no conflict between the judgment rendered by the Court of Appeals and the case of *Willis* v. *Parsons.*

It is insisted that the judgment conflicts with the case of *Hall* v. *Daniel,* 62 *Ga.* 620. There is no conflict between the two cases. The contest in the latter case was between a senior and a junior judgment, the fund having been brought into court by the junior judgment. It is urged that in *Armour Packing Co.* v. *Wynn,* supra, the holding was different from what was ruled in the cases just cited. When the facts are considered, it will be found that there is no real conflict. In the present case, according to its facts and under the authorities cited above, the judgment is not discharged by bankruptcy in so far as it affects the homestead property set aside. In the *Armour* case it was not sought to subject to the judgment on a homestead-waiver note property set aside as a homestead. On the contrary it was sought to subject wages of a laborer, a part of which under statute were exempt from garnish-

ment. In that case the debtor was adjudicated a bankrupt on April 3, 1902, and discharged from all debts provable on April 5, 1902. The judgment on which the garnishment issued was rendered previously, in 1897. Mr. Justice Lamar, speaking for the court, said: "Liens which were created four months before the filing of the petition are not divested by the bankruptcy and can be enforced after the adjudication. Metcalf v. Barker, 187 U. S. 165 [23 Sup. Ct. 67, 47 L. ed. 122]. . . But liens obtained through legal proceedings within four months prior to the filing of the petition in bankruptcy, against one who is subsequently adjudged a bankrupt, are declared to be null and void by section 67f of the bankrupt act. The judgment here was not a lien on the chose in action. Civil Code [1895], § 5353 [1910, § 5948]; *Fidelity Company* v. *Exchange Bank,* 100 *Ga.* 619 [28 S. E. 393]. And without discussing the character of the lien created by a garnishment, or determining whether the lien on a suit at common law differs from the lien of a garnishment issued on a judgment, it is sufficient to say that the lien does not inhere in the judgment itself, but is acquired, created, or obtained by the legal proceedings instituted by virtue of the garnishment affidavit and bond. It has been several times held, where an ordinary action is brought and a garnishment summons is served, and a judgment is obtained by the plaintiff against the defendant within four months of the filing of the petition in bankruptcy, and a like judgment is obtained thereafter against the garnishee, that the lien of the garnishment is rendered null, even though it may have provisionally attached by being served more than four months before the filing of the petition in bankruptcy. In re Lesser, 108 Fed. 208; In re McCartney, 109 Fed. 621, 6 Am. B. R. 367. The result is not different under our statute which permits a garnishment on a judgment already rendered." In that case the suit was "an ordinary action," not on a homestead-waiver note, and nothing had been set apart as homestead for the debtor. This facts explains the reason for the ruling that the judgment was "null and void because of bankruptcy." Only five Justices participated. Moreover, if there is a conflict, that case must yield.

It is also insisted that the Court of Appeals judgment conflicts with the decision rendered by this court in *Patterson* v. *Beck,* 133 *Ga.* 701, 708 (66 S. E. 911). Examination of that case shows

likewise that there is no conflict. In the opinion the question is stated as follows: "The only question, therefore, for consideration is whether the plaintiff, who had brought suit in a city court and caused a summons of garnishment to be served on the bank where the corporation had funds on deposit, a few days before the order of the judge of the superior court appointing a receiver, obtained such a lien or priority over other creditors, by virtue of such garnishment, that he had a right to have the fund which had been in the hands of the garnishee paid to him on account of the indebtedness of the corporation. This is not a case of bankruptcy, and involves no question of whether a garnishment proceeding was rendered void by an adjudication in bankruptcy, such as was considered in *Armour Packing Co.* v. *Wynn,* 119 *Ga.* 683 [supra], and Metcalf v. Barker [supra], or similar cases. It is a question of priority over other creditors claimed by virtue of the service of a summons of garnishment before the appointment of a receiver."

█ The petition for certiorari, on preliminary consideration, was granted on the insistence, which seemed to be true, that the judgment of the Court of Appeals was in conflict with the decisions of this court. As we have undertaken to show, that conflict, on mature consideration, is not real. The course often pursued in such a case, following the precedent of the Supreme Court of the United States, is to dismiss the writ of certiorari on the ground that it was improvidently granted. The effect of that, of course, is to affirm the judgment of the Court of Appeals. In this case we have deemed it wiser to discuss the case, and to attempt to show that there was no conflict and that the judgment of the Court of Appeals was not erroneous. That leads to an affirmance of the judgment. *Judgment affirmed. All the Justices concur.*